**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **CHARIOT LOGISTICS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | **JURY DEMAND** |
| **TRAVELERS PROPERTY CASUALTY** | ) | |
| **COMPANY OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DAMAGES

Plaintiff, Chariot Logistics, Inc. ("Chariot"), hereby states as its Complaint for Damages against Defendant, Travelers Property Casualty Company of America ("Travelers") the following.

## JURISDICTION AND VENUE

1. Chariot is a Tennessee corporation doing business in Nashville, Davidson County, Tennessee and serves as a freight broker under the authority of the Department of Transportation, Federal Motor Carrier Authority ("FMCSA"), MC No. 782830. Chariot is organized under the laws of the state of Tennessee and maintains its principal place of business in Nashville, Tennessee.

2. Travelers is a for profit corporation doing business in Davidson County, Tennessee and may be served with process through the Tennessee Commissioner of Insurance or through any owner, officer or manager at its corporate headquarters at One Tower Square, Hartford, Connecticut 06183. Travelers is organized under the laws of the state of Connecticut and maintains its principal place of business at One Tower Square, Hartford, Connecticut 06183. Thus, Travelers is a citizen of Connecticut for diversity purposes.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this lawsuit is between citizens of different states and the amount in controversy exceeds $75,000.00.

4. This Court has personal jurisdiction over all parties because the events giving rise to this litigation took place in Tennessee, and venue is appropriate in this jurisdiction pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

5. On or about October 21, 2014 and continuing thereafter, Chariot and Travelers entered into a contact for insurance, Policy No. QTJ660-7W629626 (hereinafter referred to as "the Policy"), which was effective on the dates in question and was to insure Chariot in the event of loss or damage occasioned to property or freight brokered by Chariot to motor carriers, either in interstate or intrastate commerce. A true and correct copy of the Policy is attached hereto as **Exhibit A**.

6. The Policy was issued by Travelers to Chariot at its principal office located at 6119 Charlotte Pike, Nashville, Tennessee 37209.

7. In reliance upon the above and under the terms and conditions of the Policy, Chariot fully paid Travelers the appropriate premiums. Travelers in turn was to provide Chariot with insurance coverage under the terms and conditions in the Policy.

8. At all times pertinent, Chariot was current in paying premiums on the Policy and complied in good faith with all terms and conditions of the Policy.

9. On or about March 10, 2025, Chariot, acting as a duly licensed and authorized freight broker, arrange for the transportation of a load of batteries ("the Freight") with MTC Cargo, Inc. to pick up and deliver the load owned by the customer of Chariot.

2

10. Unbeknownst to Chariot, the motor carrier, MTC Cargo, Inc., sold its federal authority held by the FMCSA to a fraudster who uses that federal authority to steal freight across the United States.

11. The fraudster picked up the Freight and stole it. To date, the stolen Freight has never been recovered.

12. The value of the stolen Freight was $85,458.20.

13. The customer of Chariot has made demand to Chariot for the loss of the Freight and Chariot, in turn, submitted a claim to the insurance agent for Travelers for the loss on March 10, 2025. A true and correct copy of the Property Loss Notice dated March 10, 2025 is attached hereto as **Exhibit B.** Travelers assigned the claim number as F2X1139.

14. On or about June 3, 2025, Travelers denied Chariot's claim on the grounds that its claim was excluded because the Freight was stolen when Chariot tendered it to an independent contractor or an owner operator. *See* Letter of June 3, 2025 from Robert G. Gostl, Jr. of Travelers attached hereto as **Exhibit C**.

15. The exclusion upon which Travelers apparently bases its declination of the Claim is "CARGO THEFT AND DISHONEST ACTS EXCLUSIONS". The Endorsement states that "[t]he following exclusions apply when an `X' is indicated in the applicable box below." The following is the only exclusion that has an `X':

(1) You, any of your partners, employees, directors, trustees, or authorized representatives;

(2) A manager or member if you are a limited liability company;

(3) Anyone else with an interest in the property, or their employees or authorized representatives; or

3

(4)    Independent Contractors or Owner Operators.

*See* **Exhibit C** attached hereto.

16.    On or about August 8, 2025, Chariot, through counsel, made demand upon Travelers and gave notice pursuant to TENN. CODE. ANN. §56-7-105 of Chariot's demand for payment of the claim within sixty (60) days of demand.  A true and correct copy of the August 8, 2025 letter is attached hereto as **Exhibit D.**

17.    By email of August 11, 2025, Travelers continued to deny the claim.  *See* **Collective Exhibit E.**

18.    In response to the August 11, 2025 continued denial, Chariot, through counsel, made Travelers aware of an issue regarding representations made to Chariot by a representative and agent of Travelers with regard to the exclusion upon which Travelers was relying to deny the claim.  Before entering into the Policy with Travelers, representatives of Chariot actually reviewed this specific exclusion and were advised that "[h]ired motor carrier that are not working under our insured's MC authority are not typically seen as owner-operators or independent contractors."  *See* **Exhibit F,** e-mail of Megan Muth dated September 12, 2024 ("the E-Mail") and the e-mail chain comprising the inquiry on Chariot into the application of the exclusion upon which Travelers now relies to deny coverage for this Claim.

19.    On or about August 13, 2025, Chariot made Travelers aware of the E-Mail.  *See* **Exhibit G.**

20.    Notwithstanding the E-Mail, Travelers continued to deny Chariot's claim for the loss.  *See* **Exhibit G**.

21.    Chariot relied upon the representation contained in the E-Mail and entered into the Policy with Travelers based upon the representation contained therein.  Specifically, had the

4

exclusion applied, no freight tendered by Chariot to any motor carrier for transportation would be insured for loss.

22. Chariot relied upon the representation of Travelers to its detriment and it has suffered damages.

23. Travelers promised Chariot coverage regarding losses for brokered loads and made no attempt to notify Chariot that an exclusion in the Policy could be read arbitrarily to preclude coverage. Chariot asked Travelers whether the exclusion regarding independent contractors or owner operators applied to brokering loads to motor carriers and Travelers and/or its agent, Megan Muth promised Chariot it did not.

24. Upon information and belief, Travelers now provides coverage to other insureds under this exact Policy language and instead of it being an exclusion to coverage, Travelers now represents to its policyholders the language is a limitation on coverage. Therefore, the exclusion upon which Travelers relies to deny coverage to Chariot is capable of two meanings by the drafter of the Policy itself, Travelers.

25. Travelers admits in its September 12, 2024 E-Mail and its subsequent denial of Chariot's claim that two different meanings of the Policy exclusion Travelers used to deny coverage exists.

26. Chariot further avers that the actions and/or omissions of Travelers as alleged were willful, wanton and malicious, done with reckless disregard for the rights of Chariot and were done without just cause or excuse allowing Chariot to recover exemplary damages.

## <u>COUNT ONE – BREACH OF CONTRACT</u>

27. The allegations of all other paragraphs of this Complaint are incorporated as if fully rewritten herein.

5

22. Chariot has dutifully performed all of the terms and conditions of the Policy by staying current with its payment of insurance premiums and following Travelers' instructions to provide requested information in order to have the Claim successfully satisfied and properly paid.

28. Travelers breached its obligations under the Policy by denying, failing, and/or refusing to timely and properly pay Chariot's claim.

29. The actions of Travelers constitute a breach of contract for which Chariot is entitled to recover the entire amount of the Claim.

## COUNT TWO – STATUTORY BAD FAITH

30. The allegations of all other paragraphs of this Complaint are incorporated as if fully rewritten herein.

31. On Friday, August 8, 2025, Chariot, through its attorney, sent Travelers a written demand for payment via email to rgostljr@travelers.com and U.S. Mail, and provided its notice of its intent to pursue the bad faith penalty against Travelers. *See* **Exhibit D**.

32. Over sixty (60) days have passed since Travelers received Chariots' August 8, 2025 demand for payment.

33. Travelers actually reaffirmed its coverage denial on or about Monday, August 11, 2025 (**Ex. E**) and did so over the weekend from Friday to Monday without performing any additional investigation, review of coverage, managerial consultation, escalation to Travelers corporate or home office, evaluation of the claim, consideration of the promises made before purchasing the Policy, or the arbitrary coverage grants being provided to other insureds under the Policy simply because Travelers can call it a "limitation" now and charge a premium, instead of calling it an exclusion, except to Chariot who did not pay a premium, which amounts to arbitrary and capricious behavior.

6

34. Upon information and belief, Travelers has been arbitrarily denying claims in Tennessee and other states where this coverage limitation or exclusion is being marketed by Travelers.

35. Unfortunately for Chariot, it did not pay a premium to Travelers in order to receive the benefit of Travelers' treatment of the language in the Policy as a limitation, not an exclusion.

36. Chariot has dutifully performed all of the terms and conditions of the Policy by staying current with its payment of insurance premiums and following Travelers' instructions to provide requested information in order to have the Claim successfully satisfied and properly paid.

37. Travelers acted in bad faith in denying, failing, and/or refusing to timely and fully pay the Claim in violation of TENN. CODE ANN. §56-7-105, *et seq.* after Chariot submitted written notice of the Claim to Travelers.

38. Travelers' bad faith is evidenced by all of the facts and allegations set forth above in this Complaint for Damages, specifically, but not limited to the following:

a. Travelers' failure to fully inform Chariot of its rights and obligations under the Policy, both before procuring the Policy and after the Policy was in effect and a premium paid to Travelers;

b. Travelers' failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Chariot's claim when liability was reasonably clear;

c. Travelers' refusal to pay Chariot's claim without conducting a reasonable investigation based upon all available information before the claim was denied, and after Chariot asked Travelers to reconsider its claim denial by evaluating all known information, data, and facts available to Travelers;

7

d. Travelers' refusal to adjust Chariot's claim properly and to pay Chariot for its loss simply because Travelers learned it could turn the exclusion into a limitation and charge and higher premium;

e. Travelers engaging in acts and practices toward Chariot that is contrary to the good faith duties owed to Chariot because Travelers made promises to Chariot before Chariot paid Travelers any insurance premium; and

f. Travelers' unjustified refusal to pay Chariot's claim for its own financial preservation because Travelers took Chariots' premium payment without providing coverage to Chariot in accordance with Chariot's reasonable reliance, payment of premium, and Travelers arbitrary treatment as to whether the words operate as an exclusion or simply a limitation.

39. As a result of Traveler's bad faith denial of the Claim, Chariot has and continues to incur substantial damages, including, but not limited to, the loss of business from its customer involved in the Loss. Travelers knew Chariot needed insurance to cover the losses for which Travelers denied coverage to Chariot only after Travelers or Travelers' agent promised Chariot coverage in case of the exact loss that Chariot asked Travelers if coverage would be afforded.

40. In so acting, Travelers intended to – and did – injure Chariot in order to protect its own financial interests and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

## COUNT THREE – TENNESSEE CONSUMER PROTECTION ACT
### Tenn. Code Ann. § 47-18-101 *et seq.*

41. The allegations of all other paragraphs of this Complaint are incorporated as if fully rewritten herein.

42. Before the Loss, and in fact during the negotiations for the purchase of the Policy, Chariot asked Travelers whether the exclusion regarding independent contractors or owner operators applied to brokering loads to motor carriers. Specifically, on September 12, 2024, Chariot, through its insurance broker, Reliance Partners, identified the inquiry as follows to Travelers: "No, what I'm asking is if Travelers is classifying the drivers of a motor carrier as independent contractors when they are the motor carrier being used on a brokered load by a freight brokerage". *See* **Exhibit F.**

43. In response, Travelers stated that the exclusion would *not* apply to brokered freight stating, "Hired motor carrier that are not working under our insured's MC authority are not typically seen as owner-operators or independent contractors." *See* **Exhibit F.**

44. Chariot does not have motor carrier authority from the Federal Motor Carrier Safety Administration of the Department of Commerce to act as a *motor carrier.* In fact, Chariot is *only* authorized to act as a freight brokerage and arrange for the transportation of freight between a shipper/customer and a motor carrier like MTC Cargo, Inc.

45. Travelers misrepresented the application of the exclusion to Chariot in order to induce Chariot to enter into the Policy**.**

46. Travelers and/or its agents, employees, representatives or other individuals acting on its behalf, engaged in unfair and deceptive acts and practices when it intentionally and falsely represented to Chariot that it would cover claims for freight tendered to motor carriers. Chariot learned of Travelers' unfair and deceptive acts and practices when it denied the Claim on or about June 3, 2025.

47. Based upon Travelers' denial of the Claim, the representations of Travelers in communications preceding the issuance of the Policy were materially false. Chariot reasonably relied upon the false statements of Travelers to its detriment and it has suffered damages.

48. The actions of Travelers were intentional, unfair and deceptive acts and practices under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* ("TCPA") because, among other reasons:

    a. Travelers' intentionally misrepresented that the Policy provided coverage which Travelers' now claims it does not (T.C.A. § 47-18-104(b)(5), (7), (12); and

    b. Travelers' intentionally caused confusion and/or a misunderstanding with respect to Megan Muth's authority to negotiate the terms of the of the Policy (T.C.A. § 47-18-104(b)(14);

49. Travelers' intentional, unfair and deceptive acts and practices as alleged in this Complaint violated the TCPA (T.C.A. § 47-18-104(a).)

50. As a sole, direct and proximate result of Travelers' intentional, unfair and deceptive acts and practices in violation of the TCPA, Chariot has and continues to incur damages in an amount to be proven at trial.

51. Because Travelers' unfair and deceptive acts and practices were intentional, Chariot is entitled to three times its actual damages in an amount to be proven at trial (T.C.A. § 47-18-109(a)(3).

52. Chariot is also entitled to recover its reasonable attorney's fees and costs (T.C.A. § 47-18-109(e)(1)).

10

## COUNT FOUR – FRAUDULENT AND/OR NEGLIGENT MISREPRESENTATION

53. The allegations of all other paragraphs of this Complaint are incorporated as if fully rewritten herein.

54. Before the Loss, and in fact during the negotiations for the purchase of the Policy, Chariot asked Travelers whether the exclusion regarding independent contractors or owner operators applied to brokering loads to motor carriers. Specifically, on September 12, 2024, Chariot, through its insurance broker, Reliance Partners, identified the inquiry as follows to Travelers: "No, what I'm asking is if Travelers is classifying the drivers of a motor carrier as independent contractors when they are the motor carrier being used on a brokered load by a freight brokerage". *See* **Exhibit F.**

55. In response, Travelers stated that the exclusion would *not* apply to brokered freight stating, "Hired motor carrier that are not working under our insured's MC authority are not typically seen as owner-operators or independent contractors." *See* **Exhibit F.**

56. Chariot does not have motor carrier authority from the Federal Motor Carrier Safety Administration of the Department of Commerce to act as a *motor carrier.* In fact, Chariot is *only* authorized to act as a freight brokerage and arrange for the transportation of freight between a shipper/customer and a motor carrier like MTC Cargo, Inc.

57. Travelers misrepresented the application of the exclusion to Chariot in order to induce Chariot to enter into the Policy**.**

58. Travelers and/or its agents, employees, representatives or other individuals acting on its behalf, engaged in fraud and/or intentional misrepresentation when it falsely represented to Chariot that it would cover claims for freight tendered to motor carriers. Travelers' denial of the Claim constituted a fraud and/or an intentional misrepresentation against Chariot.

11

59.     Based upon Travelers' denial of the Claim, the representations of Travelers in communications preceding the issuance of the Policy were materially false.  Chariot reasonably relied upon the false statements of Travelers to its detriment and it has suffered damages.

60.     The actions of Travelers were intentional, willful, malicious, and/or reckless and entitle Chariot to punitive damages.  Travelers knew that the E-Mail was false when made and yet it made the statement contained in the E-Mail recklessly and with the intent to deceive Chariot into entering into the Policy.

61.     In the alternative, Travelers' actions and/or omissions were negligent in that Travelers failed to exercise due care to should have reasonably foreseen that its statement in the E-Mail would cause harm, or damage to Chariot.

62.     As a sole, direct and proximate result of the actions of Travelers, Chariot has and continues to incur damages in an amount to be proven at trial.

### COUNT FIVE – PROMISSORY ESTOPPEL

63.     Chariot restates and re-alleges the paragraphs above as if fully set forth herein.

64.     On September 12, 2024, Travelers, through its authorized agent, represented that Travelers would provide coverage to Chariot for the types of losses and/or claims that Chariot previously inquired with Travelers.

65.     Travelers provided assurances that if Chariot would purchase the coverages in the Policy, and a loss in the manner that Chariot inquired with Travelers on or about September 12, 2024 occurred and Chariot suffered losses and/or damages such as those from Chariot's inquiry on or about September 12, 2024, Travelers would provide coverage under the Policy, subject to all terms and provisions of the Policy.

66. But for Travelers' representations that Travelers would provide coverage for the potential losses Chariot faced in its operations and for which it previously requested a coverage opinion on or about September 12, 2024, as to a potential risk covered by the Policy, Chariot would not have purchase coverage from Travelers.

67. Travelers did not uphold its promise to provide coverage under the Policy for the harms Chariot inquired about, and specifically purchased coverage against, as it initially promised.

68. To the contrary, Travelers promised Chariot coverage before the Policy was in effect, and denied the claim after Chariot purchased the Policy and the losses incurred by Chariot are those for which the Policy provides coverage. *See* **Exhibit H**, copy of limitation in new Policy.

69. Chariot has been damaged by its foreseeable and reasonable reliance by, among other things, expending attorneys' fees in litigation.

70. Chariot reasonably and foreseeably relied on Travelers promise to its detriment by delivering the purchasing the Policy.

71. Chariot has been injured as a result of its reliance on Travelers and/or its duly authorized agent, as it has been deprived of the benefit of the promised insurance coverage. Accordingly, injustice can be avoided only by enforcing Travelers promise to Chariot.

### COUNT SIX – FRAUDULENT INDUCEMENT

72. Chariot restates and re-alleges the paragraphs above as if fully set forth herein.

73. In the application process and immediately prior to entering into the Policy, Travelers made false and material representations to Chariot regarding whether or not the Policy provided coverage in favor of the potential risks faced by Chariot in its operations.

74. Travelers knew the representations were false when they were made.

13

75.     Travelers made the representations with the intent that Chariot rely upon the representations when deciding whether to purchase coverage under the Policy from Travelers.

76.     Chariot reasonably relied on Travelers' misrepresentations to its detriment by entering the Policy and paying premiums to Travelers.

77.     Chariot has been injured as a direct and proximate result of its reliance, as it has been deprived of the benefit of promised indemnity coverage for its claimed losses.

## **JURY DEMAND**

Chariot demands a jury trial on all issues which may be determined by a jury.

**WHEREFORE**, premises considered, Plaintiff, Chariot Logistics, Inc., prays as follows:

1.     That proper process be issued and served upon Travelers, requiring it to answer this Complaint for Damages within the time allotted by the Federal Rules of Civil Procedure,

2.     That Chariot be awarded a judgment of compensatory damages against Travelers in the amount of the Claim or $85,458.20.

3.     That Chariot be awarded a judgment of punitive damages against Travelers in an amount to be determined by a jury, but not to exceed the constitutional and/or statutory maximums.

4.     That Chariot be awarded any and all statutory and/or consequential damages and/or expenses incurred by Chariot and as allowed under the Bad Faith statute referenced above and for the maximum amount of twenty-five percent (25%).

5.     That Chariot be awarded three times its damages as allowed by the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(a)(3).

5.     That Chariot be awarded its attorneys' fees against Travelers pursuant to the Bad Faith statute and the Tennessee Consumer Protection Act as referenced above or under any other claim or theory allowing for the recovery of attorneys' fees.

14

6.      That Chariot be awarded pre- and post-judgment interest at the maximum rate permitted by law against Travelers.

7.      That Chariot be awarded its discretionary costs as this Court deems appropriate.

8.      That Chariot be awarded the court costs and other expenses of this action.

9.      That Chariot be awarded such other and further equitable and/or legal relief to which it may deem appropriate in this case.

Respectfully submitted,

THOMPSON BURTON, PLLC

By: /s/ *John P. Nefflen*
    John P. Nefflen (#20226)
    Thompson Burton. PLLC
    1801 West End Ave., #1550
    Nashville, TN 37203
    615-465-6000
    john.nefflen@thompsonburton.com

*Attorneys for Plaintiff Chariot Logistics, Inc.*